1                    UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS
2

3

4                                      )
     MMA FERN HALL CROSSING LLC,       )
5    and BFIM SPECIAL LIMITED          )
     PARTNER, INC.,                    )
6                                      )
              Plaintiffs,              )
7                                      )     Civil Action
     v.                                )     No. 18cv12486-DPW
8                                      )
     BRADLEY-FERN HALL I, LLC,         )
9                                      )
              Defendant.               )
10                                     )

11

12          BEFORE THE HONORABLE DOUGLAS P. WOODLOCK
                 UNITED STATES DISTRICT JUDGE
13

14

                        SCHEDULING CONFERENCE
15

16

                          March 7, 2019
17                         12:12 a.m.

18

19          John J. Moakley United States Courthouse
                     Courtroom No. 1
20                  One Courthouse Way
                 Boston, Massachusetts 02210
21

22

                   Linda Walsh, RPR, CRR
23                 Official Court Reporter
           John J. Moakley United States Courthouse
24             One Courthouse Way, Room 5205
                 Boston, Massachusetts 02210
25                 lwalshsteno@gmail.com

1    APPEARANCES:

2    On Behalf of the Plaintiffs:

3         LURIE FRIEDMAN LLP
          By: Karen E. Friedman, Esq.
4         One McKinley Square
          Boston, Massachusetts 02109
5         617-367-1970
          kfriedman@luriefriedman.com

6

7    On Behalf of the Defendant:

8         WINTHROP & WEINSTINE, P.A.
          By: David A. Davenport, Esq.
9         225 South Sixth Street, Suite 3500
          Minneapolis, Minnesota 55402-4629
10        612-604-6716
          ddavenport@winthrop.com

11

12        BURNS & LEVINSON LLP
          By: Gregory S. Paonessa, Esq.
          125 Summer Street
13        Boston, Massachusetts 02110
          617-345-3427
14        gpaonessa@burnslev.com

15

16

17                   Proceedings reported and produced
                       by computer-aided stenography
18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S
 2            THE CLERK:  Civil Action Number 18-12486, MMA Fern
 3   Hall versus Bradley-Fern Hall.  Will counsel please come
 4   forward and identify yourselves for the record.
 5            MS. FRIEDMAN:  Good afternoon, Your Honor.  My name is
 6   Karen Friedman.  I'm here for the Plaintiffs.
 7            MR. PAONESSA:  Good afternoon, Your Honor, Greg
 8   Paonessa.  I'm here for the Defendant.
 9            MR. DAVENPORT:  Good afternoon, Your Honor.  David
10   Davenport from Winthrop & Weinstine in Minneapolis.  I'm
11   admitted pro hac for the Defendant.
12            THE COURT:  Are you going to be speaking on this
13   issue?
14            MR. DAVENPORT:  Yes.
15            THE COURT:  Because I want to deal with the motions
16   first.
17            So there's a counterclaim.  Does the case go away if I
18   grant the motion to dismiss or does the counterclaim stay here?
19            MR. DAVENPORT:  I believe the counterclaim would stay
20   in.
21            THE COURT:  So you think you have got a counterclaim
22   that overcomes the declaratory judgment problems that you
23   identified in the Plaintiffs' complaint-in-chief, right?
24            MR. DAVENPORT:  Yes, I do.
25            THE COURT:  How does that work?  I mean, why are you
```

1    entitled to some preliminary judicial interpretation of this

2    rule and they're not?

3         MR. DAVENPORT:  Because we're seeking fundamentally

4    different things.

5         THE COURT:  Well, may be.  But what you're seeking is

6    an advisory opinion from a Court about the contract that you

7    folks entered into, and it doesn't become ripe -- using your

8    analysis, it doesn't become ripe until somebody takes some

9    action in this case.

10        MR. DAVENPORT:  Well, they have told us that they

11   believe they have the right to force us to sell the property.

12        THE COURT:  And you've told them that you think that

13   capital should be treated in a certain way.  And so what I have

14   is belly bumping between the parties over their respective

15   rights under the contract, but I don't have anything ripe.

16        It's not -- you know, at some point the appraiser is

17   going to make whatever decision the appraiser makes.  At some

18   point there has to be a consideration of what you do about this

19   controversy that you've raised.  But that's not now, is it?  I

20   mean, why is it now?

21        MR. DAVENPORT:  I'm sorry.  I thought you were done.

22        THE COURT:  No.  I think I finished, but I appreciate,

23   because it's unlike other lawyers, your waiting until I've said

24   whatever I wanted to say.

25        MR. DAVENPORT:  Well, if they are truly not pushing us

1    to dispose of the project, to put it on the market and try to

2    sell it, then I suppose I would have to concede that it's not

3    ripe, but if --

4         THE COURT:  Let me go back to this, so I understand

5    this more fully.  We'll put to one side your concern about the

6    disposal issue.  I'll call your counterclaim the disposal

7    issue, okay?

8         So I let the thing go forward for -- or I don't

9    interfere, don't offer a declaration with respect to their

10   claims, and so the appraisers do whatever the appraisers do, is

11   there an opportunity at that point, if there is in fact a

12   dispute about it or if the parties are not persuaded by the way

13   that -- one or the other of the parties is not persuaded by the

14   way in which the appraiser deals with this, is there an

15   opportunity then for judicial review or judicial intervention?

16        MR. DAVENPORT:  The -- to make sure I understand, I

17   apologize, so we're going to assume that the appraiser has

18   provided his valuation.  We have then delivered a buyout notice

19   with the buyout price.  We then have -- they then have the

20   opportunity under the contract to determine whether or not they

21   want to dispute that, and there's a very specific process by

22   which they have to do so.  They would have to identify material

23   errors and claim the notice is ineffective.

24        If they were to do that, there may be an opportunity

25   for judicial intervention at that time dependent upon what they

1    choose to claim are material errors.  I don't know what they

2    may claim.  It may be that they will not have the opportunity

3    to seek the judicial intervention that they seek right now

4    because the process has been allowed to be followed.  The

5    process that the parties negotiated has run its course.  The

6    appraiser has done his job.  They have to then meet this

7    threshold of material errors.

8         THE COURT:  Okay.  So is material -- is the proper

9    valuation of capital, which is, I'll call it the capital issue

10   here, a material error if the appraisers get it wrong?

11        MR. DAVENPORT:  Let me start by saying in terms of

12   what I would suggest would be more appropriate to call it would

13   be the capital count, because it's not --

14        THE COURT:  We'll call it the capital count.  Without

15   delving too deeply into it, I just want to be sure that we

16   understand.  Both of you have disputes with respect to this

17   contract.  You want me to resolve those disputes respectively

18   at this time as opposed to some later time, and I'm trying to

19   understand what the later time would look like and whether or

20   not there is what I would call an irremediable harm at this

21   point for either one of you by permitting the process to just

22   go forward as the process goes forward, with the parties making

23   their own independent judgments about whether this works out or

24   doesn't work out or whether to fight about it or not fight

25   about it, with a view that ultimately if you're not satisfied,

1    you come to court.

2          MR. DAVENPORT:  Right.  And so the capital account is

3    not a cash account.  It's a tax-keeping, bookkeeping record.

4    It's not as if it's a pile of cash.

5          THE COURT:  Right.

6          MR. DAVENPORT:  The parties decided years ago that

7    they were going to allow an appraiser to make a determination

8    on value, and they identified the process they wanted the

9    appraiser to follow.  They could not have done that.  They

10   could have said something else and provided for judicial

11   intervention, this, that and the other.  The way that they

12   negotiated this deal and documented this agreement was they

13   were going to have this process run its course and then, and

14   only then, if they thought there was a material error, they

15   could identify it.  I have my own personal beliefs, but

16   frankly, Your Honor, I think it's up to the parties to wait for

17   the appraiser --

18          THE COURT:  Yes, but this is important to me for

19   purposes of making a determination about the equitable

20   intervention of declaratory judgment.  Declaratory judgment, as

21   far as I'm concerned, is not youth wants to know and people

22   wonder into court and ask questions of the judge and then the

23   judge offers whatever gratuitous observations the judge is

24   prepared to make.  It is meant to be a way of facilitating the

25   resolution of real disputes between the parties that can't be

1    resolved any other way, or if there were some other way, or if

2    they have to wait for some other way, it's going to cause, in

3    some fashion, harm to the party that's seeking the resolution.

4         So I have this issue over the capital account -- or

5    the parties have teed up an issue over the capital account.  We

6    don't know what the appraisers are going to do about that here.

7    Now, if an appraiser said I'm not even going to consider the

8    capital account, would that be a material problem?

9         MR. DAVENPORT:  I don't think so.  I mean, I'd have to

10   see the context of his entire report.

11        But the other question would be what if he does

12   consider it?  What if he says it has value of $5 or $100?

13        THE COURT:  You know where the slippery slope starts.

14   I just started you at the top and I'm pushing you, pushing you

15   by saying the appraiser wholly disregards the capital account

16   provisions within the contract.  Is there an opportunity, from

17   your perspective, for judicial review at the time that

18   we -- you, and then perhaps me, get the appraiser's report?

19        MR. DAVENPORT:  Potentially, but they will be doing it

20   through a different lens and through a different burden and a

21   different set of case law relative to what they would have to

22   do, right?

23        I can at least share with the Court in one particular

24   instance involving Boston Financial, involving a similar --

25   almost the same partnership agreement, which the provisions are

1     numbered a little bit differently.  We have a Federal Court

2     decision from the State of Washington, not binding, but said

3     you can't use this process as a means to just shop for a

4     different outcome.  You can't use this material.

5          THE COURT:  This, I take it, was after the appraiser's

6     report and not in the context of a declaratory judgment action?

7          MR. DAVENPORT:  Right.  And so I think what's

8     happening here is they are trying to get out in front of this

9     now and trying to say tell the appraiser how to do his job.

10    Once the appraiser does his job, I may be stuck because the

11    material error piece runs in their favor.  They have the

12    opportunity to reject the notice.  Once I get the appraisal

13    report, I have to come up with a price.  So the appraiser will

14    do whatever he's going to do.  And, you know, I can see it in

15    the pleadings, right, because in Section 6.13 there are five

16    factors that are identified that the parties said they wanted

17    the appraiser to consider in coming to value, lack of control,

18    lack of marketability.

19          And you get to the fourth one, and this is where we

20    start to see very divergent views between the parties.  It

21    expressly says limitations on the ability to require

22    liquidation.  We don't believe there's anything in this

23    partnership agreement that gives them the ability to require

24    liquidation.  They can ask us to sell through the for sale

25    provision.  A sale is, upon happening of that event, something

1   that could trigger dissolution, which might lead to a

2   liquidation, but you have to actually have a sale first.  You

3   don't go on a honeymoon until you get married.  So upon a sale.

4        THE COURT:  Well, I don't want to comment on popular

5   culture as it exists now.  It used to be the case.

6        MR. DAVENPORT:  Fair enough.  So when you look at the

7   partnership agreement -- and we're going to have this fight

8   because I think they've said no matter what the appraiser does,

9   if it doesn't come out the way they want, they're going to want

10  to bring an action.

11       THE COURT:  Okay.  But see, the answer to that is

12  maybe they will, maybe they won't.

13       MR. DAVENPORT:  I agree.

14       THE COURT:  And that's what gets down to this concern

15  about declaratory judgment here.  You know, I take it, your

16  position is they can't force the dissolution.

17       MR. DAVENPORT:  Correct.

18       THE COURT:  Okay.  So you say thanks for the

19  suggestion; no.  All right.  Then I suppose the issue is truly

20  ripe, if they want to press that, to say they have to dissolve

21  because we asked them to dissolve.  But they haven't done that

22  yet.

23       MR. DAVENPORT:  We've done that in our counterclaim.

24  They have not done --

25       THE COURT:  No, no.  You've done what they did.  Your

1    counterclaim is a mirror image of their claim here, which is

2    you have -- both parties have anxious apprehensions about the

3    breadth of the -- and meaning of the contractual provisions

4    that you would like to get resolved before you face the direct

5    and definite controversy that your decision not to do it would

6    raise, and their decision that they object in some fashion to

7    the capital account issue.

8           MR. DAVENPORT:  I apologize, and I would like to try

9    to better clarify our position than we have in our papers.  But

10   our counterclaim is one that requests declaratory judgment,

11   that they cannot compel us to sell the project while we are

12   pursuing and perfecting our buyout option.

13          THE COURT:  But what if I say I'm not going to deal

14   with that?  What if I say I don't know whether they can compel

15   you or not?  I don't know how they intend to compel you.  I

16   don't know what that means in this context.  They've asked for

17   it.  That I know -- I think I know.  But I don't know whether

18   they're entitled to do that.  They don't know whether they're

19   entitled to do that.  You say they're not.  Okay.  That's a

20   dispute if they choose to bring the lawsuit.  But you've chosen

21   to take a proactive view about the litigation, wanting to be,

22   for some reason, the -- well, I understand the reasons, I

23   suppose, in terms of balance and advantage, but you want to be

24   the moving party on this issue.  I don't know why I have to

25   take that.

1          MR. DAVENPORT:  Fair enough.  I mean, we were

2    confronted with a complaint, and the complaint seeks one thing,

3    and it's asking the Court for declaratory judgment to tell the

4    appraiser to consider their capital account.  We don't believe

5    that's appropriate for the reasons we've articulated because

6    that is effectively asking the Court to coopt the process

7    before it ever happens.

8          THE COURT:  It may be that.  I think that's -- if I

9    can refine this, my thinking about it, so you understand what

10   my thinking about it is, I don't know whether or not, you know,

11   the contractual arrangement is such that the parties have

12   contracted away the right to have judicial evaluation of the

13   correctness of the determination of the appraiser, have

14   contracted away any judicial review of the appraiser's

15   adherence to the law.  I mean, I would make it a parallel

16   perhaps arbitration decision that, in which the parties might,

17   as a matter of contract, just say we don't care what -- it's

18   just we want a particular process.  It's going to be with an

19   arbitrator.  I don't know any of that.  I'm innocent of

20   knowledge about any of that.

21          This much I know is it's not ripe yet to take that up.

22   And so when you say they're trying to evade the underlying

23   contractual understanding about how this is to be resolved, I

24   understand that.  That's a defense.  But there's something

25   more, and it's something more explicit in the way in which they

1  do it, which is, they're saying, come on.  Help us out by

2  reading this contract in a way that's definitive.  They're

3  inextricably intertwined for sure, but they are two different

4  things that are intertwined.

5       All of that having been said, perhaps it keeps your

6  client up at night or perhaps it keeps their client up at night

7  to think about these kinds of things, but that they're spending

8  their nights sleeplessly doesn't mean they get to come into

9  court to get a declaratory judgment on matters that are not yet

10  ripe for consideration, and that's where I come out, and

11  there's a certain delicious irony in focusing on you first,

12  because your response is, from my perspective, is to do the

13  same thing they did.

14       MR. DAVENPORT:  Your Honor, I apologize if we stepped

15  into that hole.  We have the letter from them saying you have

16  30 days to get a broker and put it on the market.  If we're not

17  getting pushed on that issue, I have -- but to your point, that

18  effort to force us to sell has just been a paper effort so far.

19  And --

20       THE COURT:  And how could it be otherwise except if

21  they came into court at some point and said we're entitled to

22  have them sell because we made the claim, that kind of thing,

23  but they haven't done that.  They haven't darkened the door yet

24  with that.

25       MR. DAVENPORT:  Fair enough.  And apologies again.  I

1    may have jumped the gun.  This is my practice.  I do it all the

2    over the country, and they have the right, if they want, to

3    send us a removal notice and say, "hey, we think you didn't

4    market and sell it in time.  You're removed.  Get out of the

5    partnership."  We will be right back here, ripe as the day is

6    long, if that happens.  I am hoping they don't do it.  They

7    haven't.  It may be that our case, as you say, Your Honor, is

8    not yet ripe because they're not --

9         THE COURT:  So let's assume that second one; that is,

10   you're just telling me you may get rid of this case for just

11   now, Your Honor, but you are going to see us back here shortly.

12   Okay, let's assume that.  The relevance is twofold.  One is

13   force the dissolution of the partnership, right?  The second is

14   force some evaluation in terms of the price to be paid for

15   this, which is perhaps an end run around the more orderly

16   process of appraisal.  It's embedded to some degree, I suppose,

17   in the five factors here, but why wouldn't I simply say I'm

18   going to wait and see if they come in here and seek an

19   injunction or whatever they're seeking, say I'm going to wait

20   and see how this plays out in terms of the appraisal process?

21        MR. DAVENPORT:  My client and I would sleep well at

22   night.

23        THE COURT:  Well, it's always nice to have someone

24   happy when I do something, which is quite rare, I find.  But I

25   just don't see the case is ripe.  That's my point.  I've been,

1  you know, tormenting you.  Now it's your turn.

2          MS. FRIEDMAN:  Thank you, Your Honor.

3          We, of course, do see the case as ripe, that it's not

4  premature, and it has only become more so in the intervening

5  couple of months since we originally filed our complaint.  You

6  know, originally the general partner pointed to a number of

7  things that had not yet happened.  Every one of those things,

8  except the appraisal --

9          THE COURT:  That's all true, but it doesn't mean

10 anything.  I can't see it as meaning anything until somebody

11 puts a valuation on this, and then I evaluate what it is I --

12 assuming it comes back to me.  It will, by the way, under the

13 relatedness rules in terms of the timing that is involved,

14 unless somebody waits a long time, and I don't see these

15 parties as being mellow about how long they want to take to get

16 to -- before a judge, but it's really when there's a valuation.

17 That's when it's going to become ripe.

18         You say you've demanded that they -- as I understand

19 it, you've demanded that they sell this, dispose of it through

20 a broker, that kind of thing.  I can't imagine on the basis of

21 what I now know, which is limited, I can't imagine I'm going to

22 deal with that until I've got the appraiser's determination.

23 So all of you -- I mean, I understand you're like a pair of

24 racehorses right at the gate and your nostrils are flaring, but

25 the gate has not opened yet, and I'm not likely to open the

1    gate until there is an appraiser's determination, I think,

2    here.

3            MS. FRIEDMAN:  Your Honor, I think this case can

4    proceed without having had the appraisal -- without having the

5    appraisal at this very moment.  Your point about us being back

6    here within short order is well taken.  You know, we will be

7    back.

8            THE COURT:  I noticed that someone said that.  This

9    reminds me, at the risk of seeming frivolous, but perhaps the

10   story will have some metaphoric insight.  You know the story

11   about the donkey being taught to speak French?

12           MS. FRIEDMAN:  I do not.

13           THE COURT:  Good.  This is like a vaudeville cartoon.

14   You have got a straight man and a second banana.  So it works

15   this way:  The king in his court has a jester.  The king

16   accuses the jester of an illicit relationship with the queen

17   and raises it, and the jester said "I admit you're right, but I

18   understand what your remedy is, which is to kill me, and I'd

19   only ask you to defer for a year.  And if you defer for a year,

20   see that donkey over there?  I'm going to teach that donkey to

21   speak French."  So the jester says -- the king said "Hmm.  You

22   think you can really do that?"  He says "Yep."  He said "Okay.

23   I will defer execution of the sentence for an illicit

24   relationship with the queen if you can teach the donkey to

25   speak French."

1          The jester walks out, and one of the knights comes up

2     to him and says "What did you do that for?  You are not going

3     to be able to teach the donkey to speak French."  And the

4     jester said, "Well, you know, maybe.  On the other hand, you

5     know, a year is a long time.  The king may not be that

6     concerned about the queen, the queen may die, the king may die.

7     And maybe in the year, the donkey will learn to speak French."

8     Now, all of those are contingencies.

9          Declaratory judgment is supposed to cut through those

10    contingencies to some degree, but I don't know yet about this.

11    And I don't know what the harm is to anybody to wait and see

12    whether or not the anxious concern that you think I might have

13    about this coming back to me in a month should lead me at this

14    time to let this litigation go forward.  You have got to work

15    your way through this process.  I don't know who's getting hurt

16    by waiting until the appraiser reaches the conclusion.

17          Now, your brother has suggested that's going to put

18    him in a better position because then he will be able to force

19    you to your burden under these circumstances.  I don't know.

20    I'm going to be deciding this case on the basis, if I have to,

21    on the basis of the contract that's presented, and it's not

22    ripe at this point.

23          MS. FRIEDMAN:  May I?

24          THE COURT:  Sure.

25          MS. FRIEDMAN:  It's not quite like a donkey speaking

1  French.

2          THE COURT:  I wasn't suggesting a comparison to

3  anybody in the courtroom to a donkey.

4          MS. FRIEDMAN:  Aside from the argument that we'll be

5  back here, you know, at any point, the appraiser is working --

6  I would assume he's working right now.  We selected the

7  appraiser two months ago.  So I would assume that that

8  appraisal is well underway, otherwise, you know, I don't know

9  what's happening.  But it should not be -- I doubt it's going

10 to be very long before it's completed.  But putting that aside,

11 Your Honor --

12         THE COURT:  Maybe you're not going to be unhappy with

13 what the appraiser does.

14         MS. FRIEDMAN:  Oh, I have a feeling we will be.

15 Because I'd be astonished -- we would all be astonished if the

16 appraiser -- because the general partner is the one who

17 selected the appraiser --

18         THE COURT:  Did you approve of one or the other of the

19 appraisers?

20         MS. FRIEDMAN:  We had a choice of two.

21         THE COURT:  Well, did you say neither one of them is

22 acceptable to us?

23         MS. FRIEDMAN:  No, we didn't.

24         THE COURT:  So you got somebody who, under the

25 process, is presumed capable of performing this undertaking.

1          MS. FRIEDMAN:  But is also presumably in communication

2     with the general partner.  Now, one the things that the general

3     partner mentioned in one of its -- one of the memos was that,

4     you know, the appraiser is going to go ahead on certain

5     assumptions but those assumptions should be the correct

6     assumptions, and they should be -- they should be considering

7     the fact that we have the right to force a liquidation.  We

8     have the right to force a sale at any time under the contract.

9     So that should be considered.

10          THE COURT:  Okay.  So you've said you want to force

11     the sale?

12          MS. FRIEDMAN:  Yes.

13          THE COURT:  Okay.  So the appraiser either considers

14     that or doesn't consider it, and if it's material, I'll deal

15     with that at that time.

16          MS. FRIEDMAN:  Well, in addition to that initial

17     controversy, Your Honor, I mean, there are two more

18     controversies.  One is whether they should be proceeding apace

19     with finding a buyer for the property and also whether they

20     have --

21          THE COURT:  You just asked them to.

22          MS. FRIEDMAN:  I know.  And they haven't responded, so

23     we're assuming that they are not doing that.

24          THE COURT:  Let's just play it out ahead of time on

25     this aspect of the potential controversies.  So they don't do

1    it in 30 days, what are you going to do?  Come in here with a

2    motion for injunctive relief, interlocutory injunctive relief

3    to force them to sell or to engage the broker or do something

4    within 30 days; is that what you are going to do?

5              MS. FRIEDMAN:  Perhaps.  I mean, that's an option.

6              THE COURT:  Right.  Those are like the options of the

7    king dying or the queen dying.  The point is contingent.  And,

8    you know, I mean, I admire the tenacity with which the parties

9    want to pursue litigation that is premature, but it's -- that's

10   not what courts are supposed to do.  And I don't know of any

11   harm that anybody is suffering by having the deferred

12   gratification of prevailing, if they're entitled to prevail.

13             MS. FRIEDMAN:  Your Honor, the partnership is at the

14   end of its natural life, and it is time for people to go their

15   separate ways.  And the sooner that that can be resolved, the

16   better.

17             THE COURT:  Right.

18             MS. FRIEDMAN:  And I just -- there is one additional

19   controversy here, and that is, whether they can exercise their

20   option as of January 1st, and we say they can't.  And

21   they're -- the letter that they sent where they were setting up

22   the two appraisers indicated that they were exercising it as of

23   January 1st.  I think that's a present controversy.  They're

24   not entitled to do that.  They're saying we've trumped your for

25   sale right.

1      THE COURT:  I don't understand.  What's the harm

2  there?  So they do it.  And the appraiser comes back, and your

3  worst fears are realized, the appraiser doesn't give you the

4  money that you think you're entitled to, and then I evaluate

5  whether or not there's a violation of the contract.  Nothing is

6  going to happen in the interim; that is, you're either entitled

7  to the money or you're not entitled to the money; they are

8  either forced to pay you the money under the circumstances that

9  they say are applicable here or they don't; but nothing happens

10  until money passes hands or is about to pass hands here.

11      It remains other than ripe.  There's nothing really

12  definite here.  There are, what I would call, anxious

13  apprehensions about the way in which the appraiser is going to

14  review this and what the outcome is going to be.  But if you

15  think the January 1 assertion is a slam dunk, you're going to

16  be quite successful.  If it's not, of course you're not.  But

17  I'm going to be dealing with something that's got a theme to

18  the pudding that you have laid out before me.

19      MS. FRIEDMAN:  Your Honor, I think there is a present

20  dispute between parties with completely adverse interests, and

21  that it is sufficiently immediate and that judicial

22  intervention would be useful and of practical assistance.  You

23  know, it's one thing to say, well, let the appraiser go off and

24  do what they are going to do.  Why should they do that?

25      THE COURT:  I'm sorry to interrupt.  Tell me what the

1    harm is in doing that except delayed gratification.

2         MS. FRIEDMAN:  We have to come back and do it all over

3    again.  We are underway here.

4         THE COURT:  You mean the parties get to ratchet me

5    into their premature invocation of court process?  I don't

6    think that's a harm or at least not harm that I'm going to

7    recognize.  Is there any other harm?

8         MS. FRIEDMAN:  I just think we could avoid all of that

9    by directing the appraiser -- by having an interpretation of

10   the contract for the appraiser to follow in doing the

11   appraisal.  I think that makes sense rather than going through

12   the whole process and then coming back and arguing about it.

13        THE COURT:  Okay.  I think I want to bring this to a

14   conclusion at this point.

15        MS. FRIEDMAN:  Okay.  And the other thing is we have

16   written up this great joint statement --

17        THE COURT:  Right.

18        MS. FRIEDMAN:  -- for the future of the case.

19        THE COURT:  And so that will make it a lot easier for

20   you when it's time to have a joint statement for the future of

21   the case because you've consulted about this.  I'm going to

22   dismiss the case, the entire case.  I'm doing it sua sponte

23   with respect to the counterclaim that's raised by the Defendant

24   here, and the reasons have been fleshed out in our discussion.

25            Article III really does mean something.  It means

1   cases and controversies.  They have to be ripe.  There have

2   been -- was considerable dispute about even the establishment

3   of the declaratory judgment action.  I'm not refighting that

4   dispute.  But core to the determination was that vests

5   substantial discretion in the court that's presented with a

6   declaratory judgment action to determine whether or not this is

7   the time, it is sufficiently ripe, and there's developed a fair

8   amount of doctrine to deal with this.

9        I don't find this to be the time.  Nothing is going to

10  happen to the parties here that ultimately transforms their

11  rights while we go through -- or while you go through, and I

12  wait, for the resolution of, A, the question of appraisal and

13  what that amounts to; B, the question of whether or not there

14  is some action that has to be taken with respect to the forcing

15  of a disposition of the properties.

16       All of that can be dealt with but in a fashion that

17  clarifies exactly what's at issue once the appraiser's

18  determination is made.  Before then, it's simply too amorphous

19  to permit proper judicial resolution under Article III, from my

20  perspective, but in any event, under my discretion with a

21  declaratory judgment action, which amounts to the same thing,

22  my evaluation of Article III and the convenient procedure

23  that's provided by the declaratory judgment action.

24       Parties always have various kinds of disputes that are

25  churning in their minds about future activities.  They would be

1    ill advised if they aren't thinking about all of that.  That

2    doesn't mean they get to bring them into court.  And this is

3    simply not yet ready for court resolution.  I can offer

4    gratuitous advice as well as the next person, but I have not

5    been authorized by my office to do it in this setting.  I'm not

6    going to do it.

7         So I'm granting the initial motion to dismiss.  I am

8    allowing the motion to file an amended complaint and dismissing

9    it, because it is futile.  I could say that I'm denying the

10   motion to amend the complaint, but must of the same thing, it's

11   futile.  It's the same thing.  And sua sponte, because nobody

12   asked me to for various strategic reasons, I'm dismissing the

13   counterclaim.  This litigation simply isn't ripe yet.  When it

14   gets ripe, the parties will take whatever steps they think are

15   appropriate.

16        My general view, and perhaps this is gratuitous as

17   well, is to say that's not going to happen until the appraiser

18   makes a determination, and at that point there would be some

19   idea of what it is that the Plaintiffs say they are really

20   entitled to and what it is that the Defendants say they will be

21   prepared to provide either in accordance with an appraiser's

22   report or some evaluation of their litigation posture,

23   recognizing as well the larger issue that's implicit in the

24   counterclaim, that this is not merely about the amount of

25   dollars but it's also a process that the parties have entered

1   into which the Court should not pretermit in any fashion by

2   dealing with it at the premature stage by means of declaratory

3   judgment.  So I've provided a brief statement of the reasons

4   why I'm dismissing this case in its entirety here.

5           Anything else that the parties want to take up at this

6   point?  And you have a joint statement that's not merely

7   suitable for framing.  It provides a framework for any further

8   litigation that you have.  I'm not sure there's going to be

9   further litigation, but maybe there will be.  In any event, if

10  there is, and it's brought in this Court within two years of

11  the dismissal, under the local rule, it comes back to me.  All

12  right.  Thank you very much.  We'll be in recess.

13          THE CLERK:  All rise.

14          (Adjourned, 12:47 p.m.)

15

16

17

18

19

20

21

22

23

24

25

```
 1                CERTIFICATE OF OFFICIAL REPORTER

 2

 3            I, Linda Walsh, Registered Professional Reporter

 4    and Certified Realtime Reporter, in and for the United States

 5    District Court for the District of Massachusetts, do hereby

 6    certify that pursuant to Section 753, Title 28, United States

 7    Code that the foregoing is a true and correct transcript of the

 8    stenographically reported proceedings held in the

 9    above-entitled matter and that the transcript page format is in

10    conformance with the regulations of the Judicial Conference of

11    the United States.

12                      Dated this 23rd day of March, 2019.

13

14

15                      /s/ Linda Walsh_____

16                      Linda Walsh, RPR, CRR

17                      Official Court Reporter

18

19

20

21

22

23

24

25
```